# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LUIS VILLANUEVA-MARTINEZ,<br><br>Defendant. | No. CR10-4023-MWB<br><br>**ORDER ON DETENTION** |

This matter came on for hearing on April 22, 2010, on the Government's motion for detention pursuant to 18 U.S.C. § 3142(f)(2)(A). Assistant U.S. Attorney Kevin Fletcher appeared on behalf of the plaintiff (the "Government"). The defendant appeared in person with his attorney, Assistant Federal Defender Mike Smart. The Government offered the testimony of Special Agent Brett C. Stanley of the Immigration and Customs Enforcement division of the Department of Homeland Security ("ICE").

The court must determine, first, whether the Government has shown, by a preponderance of the evidence, the existence of a serious risk that the defendant will flee; and second, even if such a risk exists, whether the Government has shown there is no condition or combination of conditions that will reasonably assure the defendant's appearance as required. 18 U.S.C. § 3142(c) & (e); *see United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

The defendant is charged with making a false claim of United States citizenship, using a false Social Security number, aggravated identity theft, and other charges in connection with his illegal presence and the obtaining of employment in the United States. *See* Doc. No. 1. The evidence indicates the defendant is in the United States illegally, and he has resided in the Sioux City, Iowa, area since about 1998, except for about a year. During the year he was absent from the area, the defendant resided in his home country

of Guatemala, to which he was allowed to return voluntarily in May 2008, by an immigration judge after his arrest on state charges of identity theft (charges that later were dismissed following the defendant's voluntary departure). The record indicates the defendant was apprehended several times in May, June, and July 2005, when he attempted to enter the United States illegally from Mexico. It appears that on each of those occasions, he was taken to the border and voluntarily returned to Mexico. The defendant is married to a United States citizen, and his wife is expecting a child. In addition, he acts as stepfather to his wife's three other children.

It appears that for most of the past twelve years, the defendant has done everything he could to return to and remain in the Sioux City area to be with his family. The crimes charged are not violent in nature, and do not involve firearms, minor victims, or controlled substances. The court is unable to consider the weight of the evidence as the Government offered virtually no evidence concerning the actual crimes the defendant is alleged to have committed.

All of the above factors weigh in favor of the defendant's pretrial release on appropriate conditions. *See* 18 U.S.C. § 3142(g)(1) (listing factors the court is to consider in determining whether conditions of release will reasonably assure the defendant's appearance as required). However, there currently is an ICE detainer that, if the defendant is placed on pretrial release, would result in ICE taking custody of the defendant pending a bond hearing in immigration court. If the immigration judge denies the defendant's request for release on bond, then he will remain in ICE custody, and the possibility exists that he will be deported before he is brought to trial on the present charges. Indeed, Agent Stanley testified that the detention and removal arm of ICE could deport the defendant even if the investigative arm of the agency is attempting to keep the defendant here. Were it not for the threat of the defendant's deportation by ICE, he clearly would be eligible for pretrial release by this court.

These facts implicate the complicated interplay between the Bail Reform Act of 1984, which sets out the procedure and parameters for pretrial release and detention, and statutes requiring the deportation of persons present in the United States illegally. There is no dispute that if this court releases the defendant from the custody of the United States Marshal, he will be taken into custody by ICE, where he will face pending removal proceedings and could, in fact, be deported prior to having to face trial on the current charges and potential imprisonment. As one court has noted, in enacting the Bail Reform Act, "it is clear that Congress did not anticipate the current factual scenario." *United States v. Lozano*, slip op., 2009 WL 3834081 at *4 (M.D. Ala. Nov. 16, 2009). "No version of the Bail Reform Act has specifically addressed a factual scenario under which release from the custody of the United States Marshals Service results in further detention and a possibility of avoiding criminal prosecution altogether." *Id.* at *6.

The District of Nebraska addressed an analogous set of circumstances in *United States v. Montoya-Vasquez*, slip op., 2009 WL 103596 (D. Neb. Jan. 13, 2009) (Piester, M.J.) , and held as follows:

> The Bail Reform Act does not permit this court to speculate on the "risk" that a defendant would not appear in this court due to his being removed from this country by the same government that is prosecuting him. If any release order is entered in this court, no matter what those conditions, defendant will be released by the U.S. Marshals Service to the ICE detainer and taken into custody by ICE. It will then be up to an Immigration Judge to determine whether defendant is removed from the United States. The "risk" of an order of removal is one over which this court has no control, and whether the hearing on defendant's request for cancellation of removal is rescheduled, and if so, the merit of such request, are issues that are simply not for this court's review.
>
> There is no predicting the actions of ICE because the defendant is not in its physical custody, and the ICE Immigration Judge will not address his eligibility for bail until he is in its physical custody. In other words, I cannot address

3

the risk of ICE removing the defendant from the United States without speculating about what the Immigration Judge may do. Speculation is not evidence, much less preponderating evidence. . . . The Bail Reform Act's requirement that conditions be fashioned which would "reasonably assure" FN4/ the defendant's appearance in this court can clearly be met.

> FN4/ It should be noted that the Act's provisions do not require a "guarantee." *United States v. Orta*, 760 F.2d [887,] 889-90 [(8th Cir. 1985)].

*Montoya-Vasquez*, 2009 WL 103596 at *4. The court further "conclude[d] that 'failure to appear' as used in the Bail Reform Act is limited to the risk that the defendant may flee or abscond, that is, that he would fail to appear by virtue of his own volition, actions and will. If the government – through ICE or any other authority – prevents his appearance, he has not 'failed' to appear." *Id*. at *5.

The *Montoya-Vasquez* court noted what the result would be if looming ICE removal proceedings were taken into account in the detention determination:

> If the court could consider as determinative the speculative probabilities that a defendant would be removed from this country by ICE once he is placed in ICE custody, it would effectively mean that no aliens against whom ICE places detainers could ever be released on conditions. Such a harsh result is nowhere expressed or even implied in the Bail Reform Act. . . . If Congress wanted to bar aliens with immigration detainers from eligibility for release, it could readily have said so, but did not.
>
> Further, had Congress barred aliens against whom immigration detainers are filed from eligibility for release on conditions, such action would raise serious Constitutional issues, not the least of which would be claims of excessive bail, violation of equal protection of the laws, and violation of the separation of powers. I conclude that the risk of removal by ICE, if cognizable at all under the Act, cannot be

4

determinative of the question of a defendant's eligibility for release.

*Id. But see United States v. Campos*, slip op., 2010 WL 454903 at *5 (M.D. Ala. Feb. 10, 2010) ("This is not to say that the certainty of detention and removal is irrelevant"; detaining defendant facing ICE detainer; observing that "[t]o hold otherwise would allow an alien but not a citizen to thwart the legitimate societal interest in seeing that the laws passed by Congress are obeyed by all," and give defendants charged with illegal reentry a "get out of jail free card").

This court finds Magistrate Judge Piester's reasoning to be sound. The court will not speculate on the possible results of pending immigration proceedings involving the defendant. Accordingly, based on the factors enumerated in the Bail Reform Act, the court finds the Government has failed to prove by a preponderance of the evidence that there are no conditions of release that will reasonably assure the defendant's appearance as required. The defendant, therefore, will be released on bond.

As a condition of the defendant's release, the bond will provide that as long as the defendant is in ICE custody, no electronic monitoring will be required. However, the Attorney General (including both the United States Attorney and ICE) is ordered to notify the United States Probation office in the Northern District of Iowa promptly should any order be initiated for the defendant's deportation, ejection, or removal from the United States by any means. The defendant is ordered to notify Pretrial Services promptly if he is released on bond by the immigration court, at which time some form of electronic monitoring will be added as a condition of his pretrial release.

**IT IS SO ORDERED.**

**DATED** this 22nd day of April, 2010.

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT